UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| **DARIN BARNES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 4:21 CV 49 |
| | ) | |
| **CATERPILLAR, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION and ORDER

This matter is before the court on defendant's motion for summary judgment. For the reasons that follow, defendant's motion is granted.

### I.   BACKGROUND

This employment discrimination case arises from plaintiff Darin Barnes' employment with defendant Caterpillar, Inc. (DE # 1.) Plaintiff began working for defendant as a Machinist Technician in October 2011, at the age of 42. (DE # 27-1 at 5.) At the time of his termination, plaintiff was 51 years old. (DE # 29-8 at 3.)

   *A.   Defendant's Policies*

Defendant maintains a Prohibited Harassment Policy. (DE # 27-1 at 37.) The policy states, in relevant part:

> Caterpillar prohibits conduct that could be considered prohibited harassment or discrimination or lead to a complaint of unlawful harassment or discrimination.
>
> \*   \*   \*
>
> Prohibited harassment may consist of unwelcome conduct, whether verbal, physical, or visual, that is based on a person's sex, color, race,

> ancestry, religion, national origin, age, disability . . .. Harassment may
> include conduct, comments, gestures, pictures, or teasing that belittles or
> shows hostility toward an individual because of her/his protected status.

*   *   *

> If an investigation confirms that a Caterpillar employee or non-employee
> has violated this policy, appropriate corrective action, including
> disciplinary measures up to and including termination of employment or
> end of work assignment, will be taken.

(*Id.* at 37-38.)

Defendant also maintains an Appropriate Behaviors policy. (*Id.* at 44-45.) This policy states, in relevant part: "Employees who fail to follow any of LECU-Lafayette's work rules are subject to disciplinary action up to and including immediate termination of employment." (*Id.* at 44.) The prohibited activities under the policy include: failing to follow established safety policies and procedures; failing to comply with defendant's policies and procedures, including defendant's policies prohibiting harassment, discrimination, and workplace violence; insubordination, including failing to work in a cooperative manner with co-workers, use of abusive or threatening language, or an intent or action that is contrary to the safe and efficient operation of the facility; and deliberate carelessness or damage to defendant's property. (*Id.* at 44-45.)

Beginning in March 2020, defendant implemented social distancing rules in response to the COVID-19 pandemic. (*Id.* at 49-56.) Defendant asked employees to maintain at least six feet of space between each other. (*Id.* at 52.)

Defendant has a progressive discipline process. (*Id.* at 45.) The steps include a coaching session, a verbal warning, a written warning, a final warning/suspension, and

2

potential discharge. (*Id.* at 46.)

    B.    *Plaintiff's Discipline and Termination*

Defendant claims that between May 2017 and October 2020, plaintiff received five coaching session for inappropriate behavior, including name-calling, yelling, swearing, and disrespectful comments, and he received three coaching sessions for quality, safety, and attendance issues. (DE # 27-2 at 6-12.) Plaintiff disputes that these coaching sessions ever occurred. (DE # 29-2 at 5-13.)

On November 16, 2020, plaintiff received a verbal warning for quality of work issues, after he failed to follow a standard work instruction. (DE # 27-2 at 13.) Plaintiff does not dispute this instance of coaching. (DE # 29-2 at 13.)

Defendant claims that on November 18, 2020, plaintiff was coached for inappropriate behavior after plaintiff became argumentative and insubordinate when he was assigned to a job posting other than the one he preferred. (DE # 27-2 at 11.) Plaintiff disputes that he ever argued about his assigned posting, or ever had a conversation with his supervisor about his reassignment. (DE # 29-2 at 17-18.)

Also on November 18, 2020, plaintiff's co-worker, Gerald Reifel, reported to plaintiff's supervisor, Jesse Kelly, that two days earlier plaintiff had belittled him and touched him inappropriately. (DE # 27-2 at 2-3.) Reifel reported that he had visited the medical facility for a shoulder injury, and upon his return to the work area, plaintiff wrapped his arms around Reifel and squeezed his sore shoulder, while making sarcastic comments and laughing at Reifel. (*Id.* at 3.) Plaintiff disputes that this incident

3

occurred. (DE # 29-2 at 18-19.)

Kelly reported Reifel's complaint to Human Resources Representative Denise Wills. (DE # 27-2 at 3.) Wills initiated an investigation into the complaint, including an interview of Reifel. (DE # 27-3 at 2.) Reifel told Wills that – after returning from the medical facility for treatment of his shoulder injury – plaintiff squeezed Reifel's sore shoulder for appropriately 90 seconds, while he laughed and made sarcastic comments such as, "I am *so sorry* that you are in *so much pain*." (*Id.*) Reifel said that he felt belittled and intimidated by plaintiff, and that he was also concerned for his health because plaintiff had ignored defendant's COVID-19 social distancing rules. (*Id.* at 3.)

Reifel told Kelly that there had been a second incident with plaintiff on November 19, 2020, in which Reifel had sent an engine with screws in it down the line, and plaintiff yelled at Reifel, "We don't fucking do things like that here." (*Id.*) Reifel told Kelly that, as he tried to explain his actions to plaintiff, plaintiff interrupted him and told him, "shut your fucking mouth." (*Id.*) Reifel told Kelly that plaintiff then turned away and shoved a cart into a work bench with such force that the impact bent the legs. (*Id.*) Plaintiff denies that this incident occurred. (DE # 29-2 at 18-20.)

Reifel reported to Kelly that plaintiff has harassed other employees and repeatedly mocked a co-worker who is missing an eye. (DE # 27-3 at 3.) Reifel also told Kelly that another employee had warned Reifel that around November 16, 2020, plaintiff had asked for a gun. (*Id.*) Reifel told Kelly that he was fearful of retaliation and of what plaintiff would do. (*Id.*) Plaintiff denies that he committed any of this conduct.

4

(DE # 29-2 at 22-24.)

Wills interviewed plaintiff about these allegations, and plaintiff denied that these incidents occurred. (DE # 27-3 at 3.) Wills informed plaintiff that he was being placed on suspension pending the results of an investigation. (*Id.* at 4.)

Wills interviewed other witnesses during her investigation. (*Id.*) Wills was unable to substantiate the claim that plaintiff made threats or comments about a gun. (*Id.*) However, after corroborating Reifel's account with other witnesses, Wills believed that plaintiff had: laughed and made sarcastic comments while rubbing Reifel's shoulder; yelled at Reifel and shoved the cart into the work bench, causing damage; and on multiple occasions made fun of his co-worker who has a missing eye. (*Id.*)

Wills concluded that plaintiff had violated defendant's Prohibited Harassment Policy, Appropriate Behaviors policy, and Facility Safety/COVID Guidelines. (*Id.*) Following Wills' findings, defendant's leadership made the decision to terminate plaintiff's employment. (DE # 27-5 at 2.)

C. *Comparator Evidence*

On April 6, 2020, defendant suspended Machinist Technician Gary Lawson (age 39, at the time) for three days after he admitted to a verbal confrontation and making physical contact with Reifel on March 24, 2020. (DE # 27-3 at 5.) Defendant asserts that, at the time of his suspension, Lawson had no instances of prior discipline. (*Id.* at 5.) Plaintiff disputes this claim, pointing to a comment made on Lawson's Notice of Disciplinary Action for the incident with Reifel, which indicates a prior disciplinary

5

action on April 9, 2018. (DE # 29-3 at 2.) Defendant disputes the admissibility of this evidence. (DE # 36 at 3.)

Lawson's Notice of Disciplinary Action summarizes the incident with Reifel as follows:

> On March 24, 2020 around 12:30 am, a heated discussion over the plugging in of a fan occurred between Jerry Reifel and Gary Lawson. The verbal confrontation resulted in physical contact by Gary to Jerry's chest. A witness overheard a loud discussion between Jerry and Gary and saw physical contact initiated by Gary Lawson involving chest to chest contact.

(DE # 29-3 at 2.) Defendant argues that this document is inadmissible, but states that the factual statement itself is undisputed. (DE # 36 at 3.)

Plaintiff also claims that, after his termination, he was replaced by a younger employee, Lee Powell. (DE # 29-2 at 29.) Defendant disputes the admissibility of this evidence. (DE # 37 at 5.)

    D.    *Procedural History*

Plaintiff's complaint alleges that defendant's termination of his employment amounts to unlawful discrimination against him on the basis of his age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 ("ADEA"). (DE # 1.) Defendant now moves for summary judgment. (DE # 26.) This matter is fully briefed and is ripe for ruling.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to

6

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present proof in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

### III. DISCUSSION

    *A.    Evidentiary Objections*

The parties in this case both challenge the admissibility of certain evidence.

"Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). "Evidence offered at summary judgment must be admissible to the same extent as at trial, at least if the opposing party objects, except that testimony can be presented in the form of affidavits or transcripts of sworn testimony rather than in person." *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017).

Plaintiff argues that Reifel's statements to Wills that plaintiff harassed other employees, repeatedly mocked a co-worker who is missing an eye, and inquired about a gun, are inadmissible hearsay. (DE # 29 at 5.) The court finds this evidence admissible. Hearsay is a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Reifel's statements are not being offered for the truth of the matter asserted, but rather for the effect the statements had on the listener (Wills), who was investigating plaintiff's alleged misconduct. *See United States v. L.*, 990 F.3d 1058, 1062 (7th Cir. 2021) ("When an out-of-court statement is offered for its effect on the listener, and not for its truth, it is not hearsay.").

Defendant argues that plaintiff's testimony that Powell told plaintiff that Powell replaced plaintiff after he was terminated is inadmissible hearsay. (DE # 37 at 5.) Plaintiff did not respond to defendant's hearsay objection. The court finds that this evidence does constitute inadmissible hearsay, as it is offered for the truth of the matter asserted, and does not qualify for any exception to the hearsay rule. Thus, this evidence will not be considered in the resolution of defendant's motion for summary judgment.

Defendant also objects to plaintiff's use of Lawson's disciplinary record (DE # 29-3), on the basis that plaintiff failed to lay the proper foundation to authenticate the document. (DE # 37 at 5.) Plaintiff cites the document as evidence of a comparator who was treated more favorably than plaintiff, and also to rebut defendant's claim that Lawson is not similarly situated to plaintiff because Lawson had no prior discipline. Plaintiff did not respond to defendant's objection. The court finds that Lawson's disciplinary document (DE # 29-3) is not admissible, for lack of proper foundation.

There are two relevant rules that govern the admissibility of this document, Federal Rule of Evidence 902 (requiring the authentication of documents), and Federal Rule of Evidence 803(6) (hearsay exception that also requires authentication of the document). Generally, under these rules, a document must be authenticated by the custodian of the record, or other qualified witness. *See Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006). The fact that defendant produced the document to plaintiff during the course of discovery does not render this general requirement unnecessary.

> The mere act of producing a document in response to a discovery request based on the content of the document does not amount to an admission of the document's authenticity. A party's duty to produce documents under Federal Rule of Civil Procedure 34(a) applies to responsive documents in its "possession, custody, or control." They must be produced regardless of their authenticity, accuracy, or reliability, so the act of production does not say anything about authenticity, accuracy, or reliability. Those are matters for follow-up requests for admissions or other discovery tools.

*Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 578–79 (7th Cir. 2015) (emphasis omitted). Because plaintiff failed to lay a proper foundation for this document, it is inadmissible.

However, defendant does not dispute, and in fact has produced evidence of,

9

Lawson's altercation with Reifel. Wills' affidavit states, "On April 6, 2020, Caterpillar suspended Machinist Technician Gary Lawson (YOB 1981) for three days after he admitted to a verbal confrontation and making physical contact with Reifel on March 24, 2020." (DE # 27-3.) Furthermore, in responding to plaintiff's statement of facts, defendant declared that it is undisputed that it described the incident between Reifel and Lawson as follows:

> On March 24, 2020 around 12:30 am, a heated discussion over the plugging in of a fan occurred between Jerry Reifel and Gary Lawson. The verbal confrontation resulted in physical contact by Gary to Jerry's chest. A witness overheard a loud discussion between Jerry and Gary and saw physical contact initiated by Gary Lawson involving chest to chest contact.

(DE # 36 at 3.)

Given that defendant does not dispute the veracity of this portion of the document, this court may properly consider this portion of the evidence. *See e.g. Thanongsinh*, 462 F.3d at 777 (the party seeking admission of a document need only establish that the document has sufficient indicia of trustworthiness to be considered reliable, such as when the objecting party has conceded the accuracy of the evidence); *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) (same). Because this portion of the record is admittedly authentic, it is not hearsay, as it is a statement by a party opponent. *See* Fed. R. Evid. 801(d)(2). However, the remainder of the document remains inadmissible.

    B.    *Discrimination Claim*

"[T]he ADEA makes it unlawful for an employer 'to fail or refuse to hire ... any

10

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 746 (7th Cir. 2021) (quoting 29 U.S.C. § 623). "The ADEA protects workers who are forty years old and older from discrimination based on age." *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022).

At the summary judgment phase in an ADEA case, the court must determine whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's age caused an adverse employment action. *Chatman*, 5 F.4th at 746; *see also Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), may assist a plaintiff in convincing a court that the evidence permits such a conclusion. *Chatman*, 5 F.4th at 746. However, the court must ultimately be guided by the test articulated in *Ortiz*, and determine whether the non-moving party has produced sufficient evidence to support a jury verdict of intentional discrimination. *Id.* at 748.

In this case, Barnes has organized his argument based on the *McDonnell Douglas* framework, and therefore the court will begin assessing the evidence utilizing that construct. To establish a prima facie case under *McDonnell Douglas*, plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he performed his job in accordance with his employer's legitimate expectations; (3) he was subject to an adverse employment action despite his reasonable performance; and (4) similarly situated employees, who were not members of his protected class, were treated more favorably.

11

*Brooks*, 39 F.4th at 434. Here, the only disputes are whether plaintiff was meeting defendant's legitimate job expectations, and whether any similarly situated employees, who were not members of his protected class, were treated more favorably.

If there is sufficient evidence from which a jury could find a prima facie case of discrimination, the burden shifts to defendant to produce evidence of a legitimate, nondiscriminatory reason for terminating plaintiff's employment. *See Barnes v. Bd. of Trustees of Univ. of Illinois*, 946 F.3d 384, 389 (7th Cir. 2020). If defendant produces such a reason, the burden shifts back to plaintiff, to produce evidence that defendant's proffered reason was pretextual. *See id.* Pretext "is not just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action." *Id.* (cleaned up). "The plaintiff must demonstrate pretext by a preponderance of the evidence." *Brooks*, 39 F.4th at 435.

"Because the prima facie and pretext inquiry often overlap, if a defendant offers a nondiscriminatory reason for its actions, we can proceed directly to the pretext inquiry." *Id.*; *Brooks*, 39 F.4th at 435. In this case, the question of pretext and employer expectations do indeed overlap. Plaintiff was not meeting defendant's legitimate expectations if he physically and verbally harassed, intimidated, and mocked other employees. *See Brooks*, 39 F.4th at 435. These are nondiscriminatory reasons for termination, as these behaviors violate defendant's harassment, appropriate behaviors, and COVID policies. *See id.* The question is whether these reasons were pretextual. It does not matter if plaintiff's actions actually occurred (which, in this case, is disputed),

but whether defendant honestly believed that it had a nondiscriminatory reason for termination – that is, that plaintiff physically and verbally harassed other employees. *See id.*

Plaintiff points to Lawson as a comparator who plaintiff believes was treated more favorably that he was, based on his age. "An employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir. 2007).

Plaintiff presents evidence that Lawson, who was 39 at the time, engaged in a heated verbal confrontation with Reifel, during which Lawson made chest-to-chest contact with Reifel. As a result of this incident, Lawson received a three-day suspension. In contrast, plaintiff allegedly laughed at Reifel's injury, squeezed his injured shoulder for 90 seconds, cursed at Reifel and shoved a work bench so hard he damaged company property, and repeatedly mocked a co-worker who has one eye.

Defendant argues that Lawson was not similarly situated because Lawson had never received any discipline, whereas plaintiff had a long record of disciplinary action. Plaintiff argues that there exists a disputed question of fact as to both parts of defendant's claim. However, as discussed earlier, plaintiff has not presented any admissible evidence to challenge Wills' statement that Lawson had no prior discipline. (*See* DE # 27-3 at 5.)

13

Plaintiff does, however, present a question of fact as to whether he had discipline prior to November 16, 2020. He points to the November 16, 2020, Notice of Disciplinary Action, which shows no prior disciplinary action under the subsection for "Date(s) of prior actions." (DE # 27-2 at 13.) This court agrees that plaintiff's testimony that he had no prior disciplinary action, and the fact that there is no record of prior disciplinary action noted in the November 16, 2020, document, creates a question of fact regarding any prior discipline.

Defendant insists that the November 16, 2020, document should be read to mean that plaintiff had no prior discipline for "Quality" issues. (DE # 36 at 1.) However, there is no evidence that this is how the document should be interpreted, and it is not at all clear from the document itself that "Date(s) of previous actions" should be interpreted as limited to dates of prior "Quality" actions. Moreover, defendant's own evidence contradicts this argument, as Jesse Kelly stated that plaintiff did have prior a "Quality" action (DE # 27-2 at 2), which does not appear on the November 16, 2020, document.

The disputed question of plaintiff's prior discipline notwithstanding, Lawson does not serve as a similarly situated comparator, whose existence supports an inference of discriminatory intent. First, plaintiff had a prior instance of discipline – the November 16, 2020, verbal action for quality issues. (DE # 27-2 at 13.) Second, plaintiff's alleged misconduct – reported to Wills three days later – was both more severe and occurred on several different occasions, distinguishing plaintiff's conduct from Lawson's in a meaningful way.

14

The evidence does not support a finding that defendant's stated reason for terminating plaintiff's employment was dishonest. Even taking all of the evidence, and any reasonable inferences therefrom, in his favor, plaintiff has failed to establish pretext by a preponderance of the evidence.

Furthermore, considering the evidence holistically, no reasonable jury could find that defendant terminated plaintiff's employment based on his age. Accordingly, defendant is entitled to summary judgment.

## IV.  CONCLUSION

Defendant's motion for summary judgment (DE # 26) is **GRANTED.** The court directs the Clerk to **ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of defendant Caterpillar, Inc., and against plaintiff Darin Barnes, who shall take nothing by way of the complaint.

**SO ORDERED.**

Date: September 19, 2023

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT